**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director
and Attorney-in-Chief*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

November 28, 2022

**VIA ECF**
The Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

    RE:    **United States v. Tyler Sykes**
             **16 Cr. 043 (LGS)**

Dear Judge Schofield:

      I write in advance of Mr. Sykes' December 5, 2022 sentencing hearing following his plea of guilty to violating the conditions of his supervised release ("VOSR"). For the reasons set forth below, and in light of the lengthy state prison sentence Mr. Sykes is already serving for the conduct at issue at this sentencing, I respectfully ask the Court to sentence Mr. Sykes to time served, or in the alternative, to a period of incarceration to run concurrent with his state sentence. I further join in the Department of Probation's recommendation that Mr. Sykes be sentenced to no additional federal supervision, as he has also been sentenced to five years of post-release supervision in the state system following his term of imprisonment.

***

      On April 7, 2022, Mr. Sykes pled guilty in Manhattan Supreme Court to a single count of attempted first-degree assault. At the plea hearing, Mr. Sykes admitted to using a firearm to attempt to cause serious physical injury to another person in March 2019. *See* **Exhibit A** (Plea Minutes, April 7, 2022) at 15. As part of its plea offer, the prosecution stated its willingness to have any state sentence run concurrently with any federal sentence in the instant VOSR, should the federal sentence be imposed after the state sentence. *See id.* at 2. However, Mr. Sykes remained in state custody pending sentence, and on July 22, 2022, he was sentenced in state court to seven years of prison, followed by five years of post-release supervision. He was subsequently returned to federal custody to resolve the instant VOSR.

On September 26, 2022, Mr. Sykes appeared before Magistrate Judge James L. Cott and admitted to Specification #8 of the Second Amended Violation Report in this case, dated August 22, 2022, in full satisfaction of the VOSR. That specification directly mirrors Mr. Sykes' state conviction for which he was sentenced to seven years' prison, and five years' post-release supervision.

The defense fully acknowledges that the instant case is not Mr. Sykes' first violation of his supervised release, and that the violent nature of his repeated violations of supervised release is deeply troubling. However, Mr. Sykes' conduct *must* be viewed in the context of his greater life circumstances, as set out in the Presentence Report ("PSR"), the defense's sentencing submission dated June 30, 2016, *see* ECF No. 15, and the attached letters of support. *See* **Exhibits B-D** (Letters of Tia, Giaina, and Eric Sykes). These documents make clear that Mr. Sykes' upbringing was nothing short of horrific, characterized by instability, severe neglect, crushing poverty, and the kind of violence that leads to adult violent offending.

While I respectfully ask that the Court review the PSR and original defense submission in this case in advance of sentencing, I will summarize their salient points here. In brief, Mr. Sykes was born to a drug-addicted other unable to care for him and was removed from her care just days after his birth. PSR ¶41. He and his siblings spent the next several years being shuttled among foster homes. *Id*. They were later returned to their mother's care but experienced severe neglect and physical abuse. PSR ¶42. For example, in addition to the significant physical abuse described below, Mr. Sykes' mother would routinely take the children out of school and force them to panhandle. *Id*.

In stark contrast to past sentencing proceedings in this case, Mr. Sykes' siblings have written letters to provide the Court with better insight into his profoundly abusive upbringing.[1] In describing the hardships they endured as children, Mr. Sykes' sister, Tia, reports that their mother frequently left them alone for days at a time. *See* **Exhibit B** (Letter of Tia Sykes). She confirms that their mother physically abused them as well, and that Mr. Sykes got the worst of it:

> [Our mom] would leave us in the house for days at a time without checking up on us. Tyler felt like he had to protect and provide for us so when my mom would leave us with no food Tyler would go to our local supermarket for hours and pack bags or go to our local gas station to pump peoples gas to earn a couple dollars so we can eat at night. Even

---

[1] At the time of his original sentencing, Mr. Sykes had fallen out of touch with his siblings and was unable to provide the Department of Probation with their contact information. PSR ¶47. Following his release from federal prison in the instant case, Mr. Sykes reconnected with his siblings. Recognizing the difficulties he's had on supervised release, his siblings have enthusiastically sought to provide this Court with a more fulsome understanding of Mr. Sykes' painful and tumultuous upbringing.

> though Tyler was younger than me, he and Eric were always the ones working at supermarkets and gas stations. I stayed in school and often stayed at my aunt's house because I didn't want to be around this situation with my mom.
>
> We suffered from great child abuse when my mom did come home and was under the influence, she really took her anger out on Tyler and would beat him to the point where he would run away and never wanted to come home so he wouldn't get beat again. He was living on the streets and had to protect and defend himself. Tyler definitely got the brunt of her anger, although I still don't understand why.

Ex. B.

Mr. Sykes' younger sister, Giaina, confirms that Mr. Sykes was singularly targeted for violence by his mother:

> The times that we lived with my mother, she used to whip us all. But the way she did Tyler, it was different. He used to go to school with black eyes. We were just kids. I was young and I didn't know why she was hitting my brother. I used to sit in the room crying, and my mom would turn on the music so I couldn't hear her hitting him… When my mom started beating on Tyler, he ran away. He would sleep on the train. He was young and scared, and he had nowhere to go. The world isn't an easy place for someone like Tyler. He had to sleep outside and needed to find a way to protect himself. He was never trying to hurt anybody.

**Exbibit C** (Letter of Giaina Sykes).

Eventually, Mr. Sykes and his siblings were removed again from their mother's care, but separated in foster care. PSR ¶43. Yet in foster care, Mr. Sykes' basic needs were barely met, as he struggled to find enough food to eat. PSR ¶¶42-43. Mr. Sykes is candid that his childhood of foster care placements is a blur, and thus he cannot remember all the foster care homes he had or even the number of times the Administration for Children's Services formally removed him.

In this context, Mr. Sykes had no choice but to become a survivor, and at times, a fighter. As a teenager, he quickly accrued a criminal record, including arrests at age 16 and 18 that led to the felony convictions that served as a predicate for the instant case – a federal felon in possession arrest incurred when he was just 22 years old. Mr. Sykes was only 25 when he engaged in the conduct that led to his most recent state conviction and this sentencing proceeding. Despite his significant history of criminal justice involvement, he comes before this Court only 30 years old, facing many more years of incarceration before he will have another opportunity to reenter society.

Honorable Lorna G. Schofield                                                                         November 28, 2022
United States District Judge                                                                                      Page 4 of 6

As set forth in the defense's original sentencing submission, evidence has shown that children who grow up in foster care – and particularly those subject to the kind of instability, abuse, and neglect Mr. Sykes endured – are substantially more likely to become criminally justice involved. *See* ECF 15-1 (Defense Sentencing Submission Exhibit A). Further evidence has shown that the single best predictor of violent conduct in adulthood is prior victimization and exposure to violence.[2] In short, Mr. Sykes' upbringing lacked the kind of basic safety, stability, security, and support a child requires to lead a healthy and prosocial life. Though his recent history of violence no doubt warranted his current incarceration, it must nevertheless be understood as the product of his childhood, and particularly his own history as the victim of violence.

### Mr. Sykes Merits a Sentence of Time Served, or Alternatively, a Period of Incarceration to Run Concurrent with his State Sentence

At a certain point, additional imprisonment ceases to serve a purpose. That is the case here. Mr. Sykes will be in his mid-thirties when he is released from state custody, at which point he will be supervised by New York state's parole division. Such a lengthy sentence, during which time research suggests he will largely age out of violence,[3] is sufficient to address Mr. Sykes' lack of law abidingness while on supervised release, and indeed his violation of *this* Court's trust.

Critically, in the supervised-release context, the purposes of sentencing include rehabilitation and public safety *but not punishment*. *See* 18 U.S.C. § 3583(e) (specifically omitting reference to § 3553(a)(2)(A), the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense").[4] Mr. Sykes' lengthy prison sentence,

---

[2] *See, e.g.*, Delia Leiding et. al., *What determines violent behavior in men? Predicting physical, psychological, and sexual violent offending based on classification and regression tree analysis*, 47:5 AGGRESSIVE BEHAVIOR 570 (Jun. 7, 2021) https://doi.org/10.1002/ab.21981 (concluding that "violence is best predicted by previous exposure to violence and polyvictimization.")

[3] *See* National Institute of Justice, *From Youth Justice Involvement to Young Adult Offending*, Department of Justice, Office of Justice Programs (Mar. 10, 2014) https://nij.ojp.gov/topics/articles/youth-justice-involvement-young-adult-offending#age (noting that "[t]he prevalence of offending tends to increase from late childhood, peak in the teenage years (from 15 to 19) and then decline in the early 20s," but noting "the curve for violence tends to peak later than for property crimes.")

[4] The statutory language in § 3583(e) reflects the policies underlying supervised release, which is intended to help rehabilitate offenders and reintegrate them into the community. *See* S. Rep. No. 225, 98th Cong., 2d Sess. 124 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3307 ("[T]he primary goal of [a supervised release] term is to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short

most of which he has yet to serve, as well as his significant period of post-release supervision, will provide Mr. Sykes ample opportunities for rehabilitation. Moreover, his incapacitation through incarceration for the next several years eliminates any threat he poses to public safety. Accordingly, the defense does not ask this Court to overlook Mr. Sykes' misdeeds while on federal supervision; rather it simply asks that the Court acknowledge the goals of sentencing are already being met, and no *additional* punishment is necessary.

Moreover, Mr. Sykes' siblings provide real reasons to believe that his future attempts at re-entry will be more successful than his last one. His older brother Eric, for example, speaks of the support they will show Mr. Sykes when he completes his state sentence:

> Tyler and I have had conversations about our childhood and the trauma we went through. It's very deep, very emotional. I know Tyler is going to do 7 years in state prison and his goal after coming out is to stay to himself, get a job, and spend time with family. I have two kids, my daughter is 2 and my son is 3. Tyler talks to them on the phone when I'm with them, and we talk about all the time he's missing away from them. It's my deepest wish for my kids to have a relationship with Tyler when he's out, and I ask Your Honor to not give him any more time than he's already facing.
>
> Giaina, Tia, Tyler, and me have a very close bond. We always looked out for each other. We used to go on little picnics as kids and dream about our own families. So much has happened in our lives that have been painful and we didn't expect, but nothing will change our love for each other. We will always try to uplift each other. When Tyler gets out of prison, I'm going to be right by his side to pull him in the right direction and help him with jobs. I know that things are hard getting out of prison, it's an adjustment, but I want to help Tyler and have him move in with me. I love my brother.

See **Exhibit D** (Letter of Eric Sykes).

His sister, Tia, (a correctional officer at Rikers Island) echoes this sentiment and demonstrates what resources await Mr. Sykes when he goes onto state supervision:

> [Tyler] knows that upon his release Eric, Giaina, and I will have everything in place for him to be successful with his rehabilitation as far as having a stable comfortable place to live, financial support, and

---

period in prison for punishment or other purposes but still needs supervision and training programs after release.")

resources for him with job placement and programs. My older sister Toya is a resource counselor at a correctional facility as well. Seven years is a long time and it's not necessary to add any more time because it would just delay our plans and all the positive things that we have in place for the future.

Ex. B.

    For these reasons, Mr. Sykes respectfully asks this Court to sentence him to time served, or in the alternative, a period of incarceration to run concurrent with his state prison term. Sentencing him to additional federal imprisonment is unnecessary in light of Mr. Sykes' own difficult life circumstances, and the state sentence he will be serving for the next several years, which is sufficient to provide Mr. Sykes with opportunities to reflect on his conduct, avail himself of rehabilitative services, and prepare for a more successful reentry than the one he had on this case.

Respectfully submitted,

*/s/Hannah McCrea*
Hannah McCrea
Assistant Federal Defenders
(212) 417-8724

cc:     AUSA Sagar Ravi

**EXHIBITS**

| | |
|---|---|
| A | Plea Minutes, April 7, 2022 |
| B | Letter of Tia Sykes, Mr. Sykes' sister |
| C | Letter of Giaina Sykes, Mr. Sykes' youngest sister |
| D | Letter of Eric Sykes, Mr. Sykes' older brother |